### GEORGE W. COLLAMER *v.* ALVAN DRURY.

A regular tax bill and warrant are not, of themselves, a sufficient justification to a town collector for distraining property. He must show that all the previous proceedings were legal.

A town cannot vote a tax upon any other list than the one in being and completed at the time of the vote. The voters must assess the tax upon *their own lists*, perfected for the purpose of taxation.

TRESPASS for taking certain personal property. Plea, the general issue, with notice that the property in question was taken by the defendant as collector of the town of Barre, by virtue of a regular tax bill and warrant, &c.

The taking of the property and its value were admitted by the defendant. The defendant then offered in evidence a regular rate bill and warrant, directed to him as collector, together with transcripts of the records of the town of Barre, from which it appeared that the taxes in question were voted by the town, at their March meeting, 1841, and at a town meeting in September, 1841, to be

Collamer *v.* Drury.

assessed upon the list of 1841, which list was, by statute, to be commenced the first of April and be completed in December, 1841, and that the taxes were assessed, and the rate bill made up, by the selectmen of the town, Dec. 25, 1841 ; also testimony tending to prove that the town of Barre had, from the time of their organization, assessed their taxes upon the list of the same year in which the taxes were voted ; to all which the plaintiff objected, and the testimony was excluded by the court.

The property in question was taken by virtue of said rate bill and warrant, and there was no controversy in reference to the correctness of the subsequent proceedings of the defendant, or the liability of the plaintiff to pay taxes in that town.

The county court rendered judgment for the plaintiff, for the value of the property. Exceptions by defendant.

*L. B. Peck* for defendant.

1. In the court below judgment was given for the plaintiff, on the ground that the taxes were assessed on the wrong list. This was the main question raised, and it is regarded as the one on which the case rests.

There is no provision of the statute requiring towns to assess their taxes on the list perfected at the time the taxes are voted ; and it is hardly to be expected that this court will thus limit their power, when the legislature have not seen fit to do it, unless the interests of the public imperiously call 'for such limitation. Arguments drawn *ab inconvenienti* of this or that practice are not sufficient to avoid an assessment, and so make all the parties to it trespassers. Barre, since its first organization, has raised its taxes upon the list of the current year. They vote them in the spring, summer, or fall, as circumstances may require, but they are not made up until December, and after the list is perfected. Many other towns adopt the same course, though probably a majority of the towns in this state assess their taxes on the list of the preceding year. What is the objection to the practice adopted by Barre ? It would seem to be highly just and equitable that the charges of the town should be paid by a tax raised on the property in the town during the year these taxes are incurred,—as in that case those who are taxed will generally be members of the corporation, and have a voice in voting

the tax. Such is the result under the practice adopted by Barre. If this is sanctioned, it by no means follows that a town has a right to vote taxes on the list of 1845, to pay the charges of the year 1844, for that would work positive injustice, as it would compel individuals to pay the expenses of 1844, when they were neither inhabitants of the town nor had property therein.

The case of *Waters* v. *Daines*, 4 Vt. 601, does not affect this question. It was there held that a school district could not vote a tax on a list which was not perfected and would not be for more than thirty days after passing the vote; as to hold otherwise would in effect repeal the statute, which required such taxes to be assessed within thirty days. The point now before the court was not involved in that decision, and was expressly left open.

In *Montville* v. *Haughton et al.*, 7 Conn. 543, the precise point now raised was decided, and fully sustains the defence. Long after the taxes in that case had been made up, the legislature of that state passed a law sanctioning the course adopted, but the court decided the case upon general principles, and expressly said that the statute could not affect the case.

2. May not the rate bill and warrant be regarded as a sufficient defence for the collector? Rev. Stat. p. 377, § 36.

*O. H. Smith* and *N. Kinsman* for plaintiff.

1. If a town tax is unlawfully voted, the tax bill and warrant thereon are no protection to the collector,—the whole being without authority. This point was fully considered and decided in *Waters* v. *Daines*, 4 Vt. 601.

2. A town tax, voted and assessed on a list not in being at the time of the vote, is bad; because every tax should, in and by the vote, be fixed at some certain *per cent.* on the dollar on the list. But this would be impracticable, as the amount of the list could not be known, and therefore the amount any certain *per cent.* would raise would be entirely uncertain.

It is a principal of universal application that every tax, and especially a personal tax, should be voted by those who are to pay it, or by their representatives. This is a principal so fundamental in our government, as to have constituted the ground of our seperate national existence. Its assertion and establishment cost too much of

blood and treasure to be forgotten in our legislation, or by our courts, in the administration of our municipal regulations. The power to raise taxes, exercised by our towns and school districts, was given and is to be used only in obedience to this principle.

We have, therefore, but to settle who by law may vote, and we thereby settle, who, and who only, are subject to such personal tax. As the law stood in 1841, the list of the polls &c. was taken as of the first of April, and the business of making the list progressed, and was not completed until December. Now at the March meeting in 1841, (or at any town meeting between that and November 1841,) who were voters ? "Every male person of the age of twenty-one years, whose list shall have been taken in town the year preceeding his voting." (Rev. St. p. 86.) Clearly then, the tax voted must be on the list of the preceding year ; for, if laid on the list to be made, the new comers, and young men arriving of age, will be subject to a tax, on which they could not vote, and those who could vote the tax might remove before April, and never be subject to pay.

3.   If a town tax is not always to be voted and assessed on the last completed list, there is no legal limit or control of the town and its selectmen, and they may vote and assess the tax on the list of any past or subsequent year, without limitation. An apparent or supposed equity, arising from the tax being for a debt *previously* contracted, or for expenses *subsequently* accruing, cannot, in law, justify the voters for assessing the tax on a list of any past or future year. Where a *power* exists, the *right* is matter of discretion ; and dangerous indeed would it be to deduce such a power from the possibility of such an equity, and leave the towns to be judges of the equity, and exercise the power of voting their taxes on men who must pay without voting.

4.   Against this view of the subject it is thought no authority, or decision, can be brought to bear except the case of *Montville* v. *Houghton,* (7 Conn. R. 543.) In relation to that case it is to be remarked,—1, The construction of the statute of another state is no guide here, unless it be shown that our statute, and circumstances in relation thereto, are precisely the same; and it is apparent from the case that this is not so.   2. Connecticut had no such statute as ours, declaring who should be voters, and so settling on what list the tax should be assessed.   3. They had a statute, which the

73

court regarded as declaratory, sustaining the course here taken. 4. That whole case should be regarded as depending on the peculiar law and usage of Connecticut, and as no guide to the courts in this state; and so our court has already decided in *Waters v. Daines*, 4 Vt. 601.

The opinion of the court was delivered by

REDFIELD, J. The question, how far a tax bill and warrant, regular upon their face, are a justification to the collector, is presented for adjudication. The words of the present statute, — Rev. St., p. 377,—are, " No collector shall be liable to any action which shall accrue in consequence of any mistake, mischarge, or overcharge, in the tax bill committed to him for collection." This provision is substantially the same with that contained in the statute of 1797, and which has been in force ever since that time. It has never been considered, in this state, that the tax bill and warrant were, of themselves, any sufficient justification to the officer. Neither the vote of the town, nor the assessment of the tax by the selectmen, is in the nature of the proceedings of a court, either of general, or special, jurisdiction. The legality of all the previous proceedings must be shown by the collector. The " mistake, mischarge, or overcharge," alluded to in the statute cited, doubtless refer solely to the writing out the assessment, and the little mistakes, which might always be liable to occur, if strict mathematical accuracy were required. Section 37, too, page 377, seems to imply that the collector may be subjected to loss by reason of the illegality of the assessment,— for it provides redress for such loss.

The only remaining question is in regard to the list, upon which the tax was voted. It was voted at the March meeting, and assessed upon the list which became complete in December after. The list was not even in progress of making at the time of the vote; so that the case of *Montville v. Houghton*, 7 Conn. 543, cited in argument, is not in point for the defence. A recurrence to the statute, we think, must set the matter clear of all doubt. By the Revised Statutes, page 95, section 76, it is enacted, that " any town may vote any sums of money," &c.,—specifying the objects, and leaving it discretionary with the town when and how much to vote. It is further provided, in regard to the assessment, that " all taxes of

towns, &c., shall be uniformly assessed upon the *lists* of the persons taxed. This must import such *lists* as are then in being for the purpose of taxation. In *Henry* v. *Chester*, 15 Vt. 460, it was decided, that a list is not in being, for that purpose, until finally returned to the town clerk's office by the listers. It is impossible, then, to conclude that the legislature could have intended to give any such discretion to towns, as to put the tax forward upon a future list. That would be for one set of men to vote a tax upon the list of others, — for that, to some extent, would always be the case. The voters would be the persons listed the year before. Those to be listed the next year would always be different to some extent, and might none of them be the same. This last supposition, although never true in fact, perhaps, is always possible. This would be a manifest violation of one of the first principles of taxation in a free country, and one not likely to be wholly overlooked in a country which owes its very existence, politically, to the supposed disregard of this principle; at least, we could not suppose this, unless very obvious, and not resting upon the doubtful construction of a statute, which had practically received a contrary construction for a long course of years.

Judgment affirmed.